**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 17-62341-CIV-BLOOM

GUCCI AMERICA, INC.,

        Plaintiff,

                                                  **FILED UNDER SEAL**

vs.

2012FASHIONSTORE7, *et al.*,

        Defendants.

_____/

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF**
**TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND**
**ORDER RESTRAINING TRANSFER OF ASSETS**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

        Plaintiff, Gucci America, Inc. ("Gucci"), hereby does apply, on an *ex parte* basis, for entry of a temporary restraining order and an order restraining transfer of assets, and upon expiration of the temporary restraining order, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto ("Defendants") pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a). In support thereof, Gucci submits the following memorandum of law.

**I.**      **INTRODUCTION**

        Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing counterfeits and confusingly similar imitations of Gucci's registered trademarks within this district and throughout the United States by operating e-commerce stores via at least one third-party marketplace website under their seller identification names identified on Schedule "A" hereto (the "Seller IDs"). Specifically, Gucci has obtained evidence clearly demonstrating that (a) Defendants are engaged in the advertising and sale of counterfeit and infringing versions of Gucci's goods; and (b) Defendants accomplish their counterfeit and infringing sales through the use of, at least, e-commerce stores operated via the Internet marketplace website, eBay.com. Based on this evidence, Gucci's Complaint alleges claims for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement.

Defendants' unlawful activities have deprived and continue to deprive Gucci of its right to determine the manner in which its trademarks are presented to the public. Indeed, Defendants have and continue to wrongfully trade and capitalize on Gucci's reputation and goodwill and the commercial value of Gucci's trademarks. By their activities, Defendants are defrauding Gucci, certain non-party businesses, and the consuming public for their own benefit. Defendants should not be permitted to continue their unlawful activities, which are causing Gucci ongoing irreparable harm. Accordingly, Gucci is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful use of Gucci's trademarks.

Moreover, each Defendant uses money transfer and/or retention/processing services with PayPal, Inc. ("PayPal") as a method to receive monies generated through the sale of counterfeit and infringing products.  Gucci seeks to restrain the illegal profits generated Defendants. In light of the inherently deceptive nature of the counterfeiting business, Gucci has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless they are restrained. The Lanham Act allows Gucci to recover the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing goods. See 15 U.S.C. § 1117(a). To preserve that disgorgement remedy, Gucci seeks an *ex parte* order restraining Defendants' assets, including specifically, funds transmitted through PayPal.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Rights.

Gucci is the owner of all rights in and to the federally registered trademarks identified in Paragraph 5 of the Declaration of Vanni Volpi in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order (the "Gucci Marks"), which are used in connection with the manufacture and distribution of high quality luxury goods in the categories identified therein. (See Declaration of Vanni Volpi in Support of Plaintiff's Application for Temporary Restraining Order ["Volpi Decl."] ¶¶ 4-5, filed herewith, see also United States Trademark Registrations for the Gucci Marks [the "Gucci Trademark Registrations"] attached as Comp. Ex. 1 to the Complaint ECF No. [1-1], incorporated herein by reference.) The Gucci Marks are symbols of Gucci's quality, reputation, and goodwill and have never been abandoned. (See Volpi Decl. ¶¶ 6-7.)  Moreover, Gucci has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its trademarks. (Id.)  Accordingly, the Gucci Marks are famous marks as the term is used in 15 U.S.C. § 1125(c)(1).

2

Furthermore, Gucci has extensively used, advertised, and promoted the Gucci Marks in the United States in association with its high quality luxury goods, and has carefully monitored and policed the use of the Gucci Marks. (Volpi Decl. ¶¶ 6-8.)  As a result of Gucci's efforts, the Gucci Marks have acquired fame in the consumer market. (Id.) The Gucci Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning. (Id.) The Gucci Marks have come to symbolize the enormous goodwill of Gucci's genuine products throughout the United States. (Id.) At all times relevant hereto, Defendants have been aware of Gucci's (a) ownership of the Gucci Marks; (b) exclusive rights to use such Marks; and (c) substantial goodwill embodied in, and favorable recognition for, the Gucci Marks.

**B.     Defendants Wrongfully Use Plaintiff's Trademarks.**

Defendants do not have, nor have they ever had, the right or authority to use the Gucci Marks for any purpose. (Volpi Decl. ¶¶ 9, 12, 14.)  However, despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale goods bearing counterfeit and infringing trademarks that are exact copies of the Gucci Marks, without authorization ("Defendants' Goods"). (Volpi Decl. ¶¶ 9-14 and Comp. Ex. 1 thereto; Wiborg-Rodriguez Decl. ¶ 2; Declaration of Kathleen Burns in Support of Plaintiff's Application for Temporary Restraining Order ["Burns Decl."] ¶ 4, filed herewith; see also relevant web page captures from Defendants' Internet based e-commerce stores operating under the Seller IDs displaying the Gucci branded items offered for sale ["Defendants' Seller IDs"] attached as Comp. Ex. 1 to the Burns Decl.)

Given Defendants' slavish copying of the Gucci Marks, Defendants' Goods offered for sale and sold under identical marks are indistinguishable to consumers, both at the point of sale and post-sale. By using the Gucci Marks, Defendants have created a false association between their counterfeit and infringing goods and e-commerce stores, and Gucci.  Such false association is in violation of 15 U.S.C. § 1125(a) and is causing and will continue to cause Gucci irreparable harm and damage. (See Volpi Decl. ¶ 18.)

As part of its ongoing investigation regarding the sale of counterfeit and infringing products, Gucci's counsel retained Invisible Inc to investigate the promotion and sale of counterfeit and infringing Gucci branded products by Defendants. (Volpi Decl. ¶ 10; Burns Decl. ¶ 3; Wiborg-Rodriguez Decl. ¶ 2.)  Through eBay.com, Invisible Inc accessed the e-commerce

stores operating under each Defendant's Seller IDs, placed orders from each Defendant for the purchase of various products – all bearing[1] counterfeits of, at least, one of the Gucci Marks at issue in this action – and requested each product to be shipped to one of its addresses in the Southern District of Florida.  (Burns Decl. ¶ 4 and Comp. Ex. 1 thereto.)  Following the submission of its orders, Invisible Inc finalized payment for the various products ordered via PayPal, Inc. ("PayPal") to Defendants' respective PayPal accounts, which are identified on Schedule "A" hereto.  (See id.)[2]  At the conclusion of the process, the detailed web page captures and images of the various Gucci branded products ordered via each Defendants' Seller IDs were sent to Gucci's representative, Vanni Volpi, for inspection. (See Burns Decl. ¶ 4; Volpi Decl. ¶ 11; Wiborg-Rodriguez Decl. ¶ 2.)

Gucci's representative, Vanni Volpi, who has the ability to identify the distinctions between genuine Gucci branded merchandise and counterfeit copies of the same, conducted a review and visually inspected the detailed web page captures reflecting the Gucci branded products identified and captured by Invisible Inc, and determined the products were not genuine versions of Gucci's goods.  (Volpi Decl. ¶¶ 10-14 and Comp. Ex. 1 thereto, summary comparison table together with printouts illustrating examples of Defendants' infringement of the Gucci Marks.)

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison, courts have found that even marks that are slightly modified from the registered marks copied are to be considered counterfeit marks. See Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1 (S.D. Fla. 1983).  A comparison of the Gucci Marks to the marks and designs used by Defendants in connection with the promotion and sale of Defendants' Goods reveals the obvious counterfeit and infringing nature of Defendants' Goods. (Compare Gucci's Trademark Registrations [Comp. Ex. 1 to the

---

[1] Some of the Defendants blurred-out and/or physically altered the images of the Gucci Marks on the product being offered for sale via their respective e-commerce store. The product I received from these Defendants bear the Gucci Marks in their entirety.  True and correct photographs of the products I received from certain Defendants who blurred-out and/or physically altered the images of the Gucci Marks on their product listing are included in Composite Exhibit "1" hereto. (See Burns Decl. ¶ 4, n.1.)

[2] Additional contact email address provided by Defendants are also identified on identified on Schedule "A" hereto. (See Burns Decl. ¶ 4, n.2.)

Compl.] <u>with</u> Defendants' Seller IDs [Comp. Ex. 1 to the Burns Decl.)  Defendants' Goods are being promoted, advertised, offered for sale, and sold by Defendants to consumers within this district and throughout the United States. (<u>See</u> Burns Decl. ¶ 4.)  Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them.  Defendants are also falsely representing to consumers that their Goods are genuine, authentic, endorsed, and authorized by Gucci.  Ultimately, Defendants' Internet activities amount to nothing more than illegal operations infringing on Gucci's intellectual property rights.  The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Gucci.

## III.    <u>ARGUMENT</u>

### A.    **A Temporary Restraining Order is Essential to Prevent Immediate Injury.**

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  This is such a case.

Defendants herein fraudulently promote, advertise, sell, and offer for sale goods bearing counterfeits and infringements of the Gucci Marks via their e-commerce stores using the Seller IDs.  By their actions, Defendants are creating a false association in the minds of consumers between Defendants and Gucci.  Specifically, Defendants are wrongfully using counterfeits and infringements of the Gucci Marks to increase consumer traffic to their illegal operations. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the Gucci Marks and would preserve the status quo until such time as a hearing can be held.  <u>See</u> <u>Dell Inc. v. BelgiumDomains, LLC</u>, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order without notice, Defendants can and, based upon Gucci's counsel's past experience, will significantly alter the status quo before the Court can determine the parties' respective rights.  In particular, the Internet based e-commerce stores and

Seller IDs at issue are under Defendants' complete control.  Thus, Defendants have the ability to modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs. (See Wiborg-Rodriguez Decl. ¶ 3.)  Such modifications can happen in a short span of time after Defendants are provided with notice of this action. (Id.) Defendants can also easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo.  (Id.)  In short, absent a temporary restraining order, Defendants could completely erase the status quo.  (Id.)  As Defendants engage in illegal trademark counterfeiting activities, Gucci has no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any more than they have adhered to federal trademark law. (Id.)

Moreover, federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. Columbia Pictures Indus., Inc. v. Jasso, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"); Mycoskie, LLC v. 0.HK614, Case No. 17-cv-61985-BB (S.D. Fla. Oct. 12, 2017, entered on docket Oct. 13, 2017) (Order granting *Ex Parte* Application for Temporary Restraining Order).  This Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order which precludes Defendants from continuing to display their infringing content via the e-commerce stores or modifying or deleting any related content or data.  Only such an order will prevent ongoing irreparable harm and maintain the status quo.

**B.      Standard for Temporary Restraining Order and Preliminary Injunction.**

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same.  See Emerging Vision, Inc. v. Glachman, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing Siegel v. LePore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)).  In order to obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on

the non-movant; and (4) that entry of the relief would serve the public interest. <u>Schiavo ex rel. Schindler v. Schiavo,</u> 403 F.3d 1223, 1225-26 (11th Cir. 2005); <u>see also</u> <u>Levi Strauss & Co. v. Sunrise Int'l Trading Inc.</u>, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).  Gucci's evidence establishes all of the relevant factors.

> **1.      Probability of Success on the Merits of Gucci's Claims.**
>
> **a)      Likelihood of Success on Counterfeiting Claim.**

Title 15 U.S.C. §1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive."  Gucci must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the trademarks is without Gucci's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. <u>See</u> 15 U.S.C. § 1114(1).  Gucci's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

The first two elements of Gucci's trademark counterfeiting and infringement claims are easily met. The Gucci Marks are owned by Gucci and registered on the Principal Register of the United States Patent and Trademark Office, and the many of the marks at issue herein have become "incontestable" under 15 U.S.C. §§ 1058 and 1065.[3]  (<u>See</u> Volpi Decl. ¶ 5; <u>see also</u> Gucci Trademark Registrations, attached as Comp. Ex. 1 to the Compl.) <u>See</u> <u>Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.</u>, 741 F. Supp. 1546, 1554 (S.D. Fla. 1990) ("Incontestable status provides conclusive evidence of the registrant's exclusive right to use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act.").  Moreover, Defendants have never had the right or authority to use the Gucci Marks.  (Volpi Decl. ¶¶ 9, 12, 14.)

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. <u>See</u> <u>Ross Bicycles, Inc. v. Cycles USA, Inc</u>., 765 F.2d 1502, 1506 (11th Cir. 1985). These factors, as outlined in <u>Safeway Store, Inc. v. Safeway Discount Drugs, Inc.</u>, are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion.  <u>See</u> 675 F.2d 1160, 1164 (11th Cir. 1982); <u>see also</u> <u>Lipscher v.</u>

---

[3] Trademark Registrations 4,349,908, 4,379,039, 4,555,556, 4,563,071, 4,563,098, 4,563,132, 4,567,112, 4,583,258, and 5,073,022 are not incontestable.

LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997).  The seven factors listed are to be weighed and balanced and no single factor is dispositive.  (Id.)

### (1)     Strength of the Marks.

A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. See Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 362 (11th Cir. 1997).  The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992).  Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. (See id.)  It cannot be seriously disputed that the Gucci Marks are strong, arbitrary and fanciful marks. (See Volpi Decl. ¶ 5; see also Gucci Trademark Registrations, attached as Comp. Ex. 1 to the Complaint.)

The Gucci Marks have also acquired secondary meaning. Gucci has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Gucci Marks. (Volpi Decl. ¶¶ 6-7.) The Gucci Marks enjoy widespread recognition and are prominent in the minds of consumers. Indeed, the Gucci Marks are among the most widely recognized trademarks in the United States for luxury goods. (Id.)

### (2)     Similarity of the Marks.

Likelihood of confusion is greater when an infringer uses the exact trademark.  Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004).  Defendants are using marks that are identical to the Gucci Marks. (Compare Gucci's Trademark Registrations [Comp. Ex. 1 to the Compl.] with Defendants' infringing marks [Comp. Ex. 1 to the Volpi Decl., summary comparison table illustrating examples of Defendants' infringement of the Gucci Marks]; see generally Defendants' Seller IDs, attached as Comp. Ex. 1 to the Burns Decl.)

### (3)     Similarity of the Goods.

"The greater the similarity between the products and services, the greater the likelihood of confusion."  John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983). Defendants are selling the same types of goods Gucci sells. (Volpi Decl. ¶¶ 4-5, 13 and Comp. Ex. 1 thereto, summary comparison table illustrating examples of Defendants' infringement of the Gucci Marks; see generally Defendants' Seller IDs, attached as Comp. Ex. 1 to the Burns

Decl.)  Because they bear counterfeits of the Gucci Marks, Defendants' Goods appear virtually identical to Gucci's genuine products in the consumer market.  Standing alone, this similarity can be held sufficient to establish a likelihood of confusion.  See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983).

### (4)      Similarity of Sales Method and (5) Advertising Method.

Convergent marketing channels increase the likelihood of confusion. See Turner Greenberg Assocs., 320 F. Supp. 2d at 1332.  Both Gucci and Defendants sell and advertise their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. (See Volpi Decl. ¶¶ 4-5; Burns Decl. ¶ 4.)  Thus, the conditions of purchase for both parties are unmistakably identical.  Moreover, both target the same general U.S. consumers, and as such, Gucci is directly competing with Defendants' products.

### (6)      Defendants' Intent.

In this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'"  Turner Greenberg Assocs., 320 F. Supp. 2d at 1333, citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999).  In a case of clear-cut copying, it is appropriate to infer Defendants intended to benefit from Gucci's reputation, to Gucci's detriment. See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Florida, 546 F. Supp. 987, 996 (S.D. Fla. 1982).

### (7)      Evidence of Actual Confusion.

Actual confusion is unnecessary to establish infringement since the test is likelihood of confusion.  See Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are advertising, offering to sell and selling counterfeit goods identical in appearance to those sold by Gucci. (Volpi Decl. ¶¶ 5, 9-14 and Comp. Ex. 1 thereto; Burns Decl. ¶ 4 and Comp. Ex. 1 thereto.)  Even if buyers are told of the bogus nature of Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will obviously be confused, because they are viewing goods bearing the Gucci Marks, which undeniably creates the impression they are viewing genuine goods sold or authorized by Gucci.  Such post-sale confusion is entirely actionable.  See Remcraft Lighting

Products, Inc. v. Maxim Lighting, Inc., 706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused.").

The seven factors weigh only in Gucci's favor. Gucci has therefore shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

**b)      Likelihood of Success on False Designation of Origin Claim.**

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue.   Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992).  Whether the violation is called infringement, unfair competition, or false designation of origin, the test is identical – is there a "likelihood of confusion?" Id. Thus, because Gucci has established the merits of its trademark counterfeiting and infringement claims against Defendants, a likelihood of success is also shown as to Gucci's claim for false designation of origin.

**c)      Likelihood of Success on Common Law Unfair Competition Claim.**

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. Rolex Watch U.S.A., Inc. v. Forrester, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in John H. Harland, Inc. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983.)".) Gucci has established there is a likelihood of confusion regarding Defendants' use of the Gucci Marks on their counterfeit and infringing products. Accordingly, Gucci is also likely to succeed on the merits of its common law unfair competition claim.

**d)      Likelihood of Success on Common Law Trademark Infringement Claim.**

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act.   PetMed Express, Inc., 336 F. Supp. 2d at 1217-18.  As discussed above, Gucci has satisfied the three elements of its trademark counterfeiting and infringement claims against Defendants,

establishing that a likelihood of confusion exists herein.  Therefore, Gucci is also likely to succeed on the merits of its common law trademark infringement claim.

### 2.      Gucci is Suffering Irreparable Injury.

As the Eleventh Circuit expressed it: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998).  Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of a defendant's activities.  Id.  A likelihood of confusion exists herein because Defendants have engaged in counterfeiting activities using spurious designations indistinguishable from the Gucci Marks.

### 3.      The Balance of Hardship Tips Sharply in Gucci's Favor.

Gucci has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Gucci Marks.  (Volpi Decl. ¶¶ 6-8.)  Should Defendants be permitted to continue their trade in counterfeit goods, Gucci will suffer substantial losses and damage to its reputation.  (See id. at ¶¶ 8, 18.)  However, Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued, because Defendants have no right to engage in their present counterfeiting and infringing activities.

### 4.      The Relief Sought Serves the Public Interest.

Defendants are engaged in criminal activities and are directly defrauding the consuming public by palming off Defendants' Goods as genuine goods of Gucci.  The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. See Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

### C.      The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

**1.      Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Gucci's Trademarks is Appropriate.**

Gucci requests an order requiring Defendants to immediately cease all use of the Gucci Marks, or substantially similar marks, including on or in connection with all Internet e-commerce stores owned and operated, or controlled by them.  Such relief is necessary to stop the ongoing harm to Gucci's trademarks and goodwill and to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of the Gucci Marks. Many courts, including this Court, have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks.[4]

**2.      Entry of an Order Prohibiting Transfer of the Seller IDs During the Pendency of this Action is Appropriate.**

To preserve the status quo, Gucci seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller IDs being used and controlled by Defendants to other parties. Defendants operating via online e-commerce platforms, once they become aware of litigation against them, easily can, and often will, modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs, and thereby thwart the Court's ability to grant meaningful relief. (Wiborg-Rodriguez Decl. ¶ 3.) Here, an interim order prohibiting Defendants from transferring their e-commerce stores operating under the Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Gucci full relief.[5]

---

[4] See Mycoskie, LLC v. 0.HK614, Case No. 17-cv-61985-BB (S.D. Fla. Oct. 12, 2017, entered on docket Oct. 13, 2017) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order); Michael Kors, L.L.C. v. Akon Ahzhe, Case No. 17-cv-61820-BB (S.D. Fla. Sept. 20, 2017, entered on docket Sept. 21, 2017) (same); Chanel, Inc. v. Efank, Case No. 17-cv-61529-BB (S.D. Fla. Aug. 3, 2017) (same); Fendi Adele, S.r.l. v. Adam Vibbert, Case No. 17-cv-61907-BB (S.D. Fla. June 1, 2017) (same); Mycoskie, LLC v. Csmlong188, Case No. 17-cv-60782-BB (S.D. Fla. April 24, 2017, entered on docket April 25, 2017) (same); Audemars Piguet Holding SA v. KKKwatch.com, Case No. 17-cv-60517-BB (S.D. Fla. March 17, 2017) (same). See also adidas AG et al v. 8877380, Case No. 17-cv-61647-DPG (S.D. Fla. Sept. 22, 2017, entered on docket Sept. 26, 2017) (same); adidas AG et al v. bazhuk6, Case No. 17-cv-61652-RNS (S.D. Fla. Aug. 31, 2017) (same).

[5] See e.g., Mycoskie, LLC v. 0.HK614, Case No. 17-cv-61985-BB (S.D. Fla. Oct. 12, 2017, entered on docket Oct. 13, 2017) (Order restraining the transfer of e-commerce stores operating via marketplace platform); Michael Kors, L.L.C. v. Akon Ahzhe, Case No. 17-cv-61820-BB

3.     An *Ex Parte* Order Restraining Transfer of Assets is Appropriate.

In addition to an order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets.  Gucci has demonstrated above that it will likely succeed on the merits of its claims. As such, under 15 U.S.C. § 1117, Gucci will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their counterfeiting scheme. Due to the deceptive nature of the counterfeiting business, and Defendants' deliberate violations of federal trademark laws, Gucci respectfully requests this Court grant additional *ex parte* relief restraining the transfer of all monies held or received by PayPal or other financial institutions for the benefit of any one or more of the Defendants. See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc., 80 F.3d 749 (2d Cir. 1996); see also SEC v. ETS Payphones, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed. Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 144 L. Ed. 2d 319, 119 S. Ct. 1961 (1999). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets *pendente lite.* See Mason Tenders Dist. Council Pension Fund v. Messera, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all the Circuit Courts have held that Rule 65 is available to freeze assets *pendente lite* under some set of circumstances").

In light of the illicit nature of the counterfeiting business and the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of

---

(S.D. Fla. Sept. 20, 2017, entered on docket Sept. 21, 2017) (same); Chanel, Inc. v. Efank, Case No. 17-cv-61529-BB (S.D. Fla. Aug. 3, 2017) (same); Fendi Adele, S.r.l. v. Adam Vibbert, Case No. 17-cv-61907-BB (S.D. Fla. June 1, 2017) (same); Mycoskie, LLC v. Csmlong188, Case No. 17-cv-60782-BB (S.D. Fla. April 24, 2017, entered on docket April 25, 2017) (same); Audemars Piguet Holding SA v. KKKwatch.com, Case No. 17-cv-60517-BB (S.D. Fla. March 17, 2017) (same). See also adidas AG et al v. 8877380, Case No. 17-cv-61647-DPG (S.D. Fla. Sept. 22, 2017, entered on docket Sept. 26, 2017) (same); adidas AG et al v. bazhuk6, Case No. 17-cv-61652-RNS (S.D. Fla. Aug. 31, 2017) (same).

such asset restraints in cases involving counterfeiting defendants. See, e.g. Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d 982 (11th Cir. 1995); Reebok Int'l Ltd. v. Marnatech Enter., 737 F. Supp. 1515 (S.D. Cal. 1989), aff'd, 970 F.2d 552 (9th Cir. 1992). In Levi Strauss, the Eleventh Circuit upheld an order granting an asset restraint against an alleged counterfeiter where the complaint included a request for a permanent injunction and the equitable remedy of disgorgement of the alleged counterfeiter's profits under 15 U.S.C. § 1117. Levi Strauss, 51 F.3d at 987. Distinguishing Levi Strauss from two earlier cases not involving Lanham Act claims, the Court emphasized the necessity of the restraint holding that a "request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." Id. citing Federal Trade Commission v. United States Oil and Gas Corp., 748 F.2d 1431, 1433-34 (11th Cir. 1984) (district court may exercise its full range of equitable powers, including a preliminary asset restraint, to ensure that permanent equitable relief will be possible). Indeed, courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested.  See S. E. C. v. Lauer, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (noting that there is no requirement for the restrained assets be traceable to the fraudulent activity underlying a lawsuit); Levi Strauss & Co. v. Sunrise Int'l Trading, 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); Kemp v. Peterson, 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity). In cases in this district substantially similar to this matter, this Court and others have entered the precise relief sought herein.[6]

_____

[6] See e.g., Mycoskie, LLC v. 0.HK614, Case No. 17-cv-61985-BB (S.D. Fla. Oct. 12, 2017, entered on docket Oct. 13, 2017) (Order granting TRO, restraining funds held or received by PayPal, Inc. to preserve assets to satisfy Plaintiff's requested relief); Michael Kors, L.L.C. v. Akon Ahzhe, Case No. 17-cv-61820-BB (S.D. Fla. Sept. 20, 2017, entered on docket Sept. 21, 2017) (Order granting TRO, requiring Amazon Payments, Inc. and PayPal, Inc. to identify defendants' payment accounts and to restrain the funds in those accounts to preserve assets to satisfy Plaintiff's requested relief); Chanel, Inc. v. Efank, Case No. 17-cv-61529-BB (S.D. Fla. Aug. 3, 2017) (Order granting TRO, requiring Amazon Payments, Inc. to identify defendants' payment accounts and to restrain the funds in those accounts to preserve assets to satisfy Plaintiff's requested relief); Fendi Adele, S.r.l. v. Adam Vibbert, Case No. 17-cv-61907-BB (S.D. Fla. June 1, 2017) (Order granting TRO, requiring Amazon Payments, Inc. and PayPal,

Similarly, in <u>Reebok v. Marnatech</u>, the District Court granted Reebok a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. <u>Reebok Int'l Ltd.</u>, 737 F. Supp. at 559. In affirming the decision, the Ninth Circuit determined that the plaintiff met its burden of demonstrating: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. <u>Reebok Int'l Ltd.</u>, 970 F.2d 552, 563 (9th Cir. 1992). Moreover the Court reasoned: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." <u>Reebok Int'l Ltd.</u>, 970 F.2d. at 559; <u>see also</u> <u>Republic of Philippines v. Marcos</u>, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989) ("[a] court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their assets under trademark infringement claims. <u>See e.g.</u>, <u>Levi Strauss</u>, 51 F.3d at 987; <u>Reebok Int'l Ltd.</u>, 970 F.2d at 559.  Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued <i>ex parte</i>. <u>See</u> <u>F.T. Int'l Ltd v. Mason</u>, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting <i>ex parte</i> TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or

---

Inc. to identify defendants' payment accounts and to restrain the funds in those accounts to preserve assets to satisfy Plaintiff's requested relief); <u>Mycoskie, LLC v. Csmlong188</u>, Case No. 17-cv-60782-BB (S.D. Fla. April 24, 2017, entered on docket April 25, 2017) (Order granting TRO, restraining funds held or received by PayPal, Inc. to preserve assets to satisfy Plaintiff's requested relief); <u>Audemars Piguet Holding SA v. KKKwatch.com</u>, Case No. 17-cv-60517-BB (S.D. Fla. March 17, 2017) (Order granting TRO, <i>inter alia,</i> restraining funds held or received by PayPal, Inc. to preserve assets to satisfy Plaintiff's requested relief). <u>See also</u> <u>adidas AG et al v. 8877380</u>, Case No. 17-cv-61647-DPG (S.D. Fla. Sept. 22, 2017, entered on docket Sept. 26, 2017) (Order granting TRO, restraining funds held or received by PayPal, Inc. to preserve assets to satisfy Plaintiff's requested relief); <u>adidas AG et al v. bazhuk6</u>, Case No. 17-cv-61652-RNS (S.D. Fla. Aug. 31, 2017) (same).

alienate funds); CSC Holdings, Inc. v. Greenleaf Elec., Inc., 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

In this case, Defendants' blatant violations of federal trademark laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' businesses are conducted anonymously over the Internet, Gucci has additional cause for *ex parte* relief, as Defendants may easily secret or transfer their assets without the Court's or Gucci's knowledge.

### D.    A Bond Should Secure the Injunction.

Because of the strong and unequivocal nature of Gucci's evidence of counterfeiting and infringement, Gucci respectfully requests this Court require it to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should the restrained funds exceed $10,000.00. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## IV.    CONCLUSION

In view of the foregoing, Plaintiff, Gucci America, Inc., respectfully requests this Court grant its *Ex Parte* Application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Additionally, due to the time provisions of a temporary restraining order, in the event the application is granted, Gucci respectfully requests the Court provide a copy of the temporary restraining order to Gucci's counsel via e-mail at raquel@smgpa.net so that Gucci may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing date.

DATED: November 30, 2017.          Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **s/T. Raquel Wiborg-Rodriguez**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net

E-mail: Raquel@smgpa.net

Attorneys for Plaintiff, Gucci America, Inc.

### SCHEDULE "A"
### DEFENDANTS BY NUMBER, SELLER ID, PAYPAL ACCOUNT
### AND ADDITIONAL E-MAIL

| Def. No. | Seller ID Name | PayPal Account | Alternate E-mail Address |
|---|---|---|---|
| 1 | 2012fashionstore7 | danyangtina2012@gmail.com | |
| 1 | dji2016 | happyshoppinggo2014@gmail.com | |
| 1 | shining5star2011 | daisyfighting2011@gmail.com | |
| 2 | 17jingerfushi | zhangtengxue2016@hotmail.com | |
| 3 | 8_20839 | dgsb265186@163.com | |
| 4 | angelkiss*520 | chunxian168@outlook.com | |
| 5 | anyu8899 | fashionman628@163.com | |
| 6 | babyonline_01 supermark2016 | zhangmiaozd@hotmail.com | |
| 7 | bayprabow0 | bayumprabowo2@gmail.com | |
| 7 | fertena-0 | feratenan9990@gmail.com | |
| 7 | herlinekayuli_0 | herlinay72@gmail.com | |
| 7 | newcoverscustom | custombaycovers@gmail.com | |
| 7 | rudidewantor_0 | RNDewantoro@gmail.com | |
| 8 | best-gift | kkokdoc@hotmail.com | collegboy2007@hotmail.com |
| 9 | boiling-art | langmonkey@hotmail.com | |
| 9 | meetyou520 | langmonkey@hotmail.com | |
| 10 | change2020 | xinmrping2611@163.com | |
| 11 | chen-o or2017 | maylo5@walla.com | |
| 12 | chinesehotdress | 787719301@qq.com | lolitababy45678@gmail.com |
| 13 | cn2015-xiaog | zhangxiaogou1@hotmail.com | |
| 14 | creativelife888 | guoyun888@outlook.com | |
| 15 | daniarde_0 | danisardea71@gmail.com | |
| 16 | diyuanzhiyi666 | weidi771@126.com | |
| 17 | easy.shopping | Miss_liu1989@163.com | |
| 18 | esunshine1581 | sunshinego.2389@hotmail.com | |
| 19 | fctchaotian-9 | fctchaotian@126.com | |
| 20 | firstagaintecs | firstagaintec02@outlook.com | |
| 21 | gimasin-0 | gimansing000@gmail.com | |
| 22 | guomiao5218 | jiayou201789@163.com | |
| 23 | jiaxuan168 | hanjiaxuan001@126.com | |
| 24 | jingghu_0 | jinggohuu767@gmail.com | |
| 25 | khusnukhatima-0 | kkhatimah86@gmail.com | |
| 26 | lcsshaozi | liuli1989115@163.com | |
| 27 | leche666 | nashkimberly933@gmail.com | |

| Def. No. | Seller ID Name | PayPal Account | Alternate E-mail Address |
|---|---|---|---|
| 28 | loveme518 manclothing618 | liuyao19880128@163.com | |
| 29 | menswear1616 pursuebt866 | 13957922974@163.com | |
| 30 | no1mensclub | 13617938815@163.com | |
| 31 | pws-7_3 | hejiap201702@outlook.com | |
| 32 | pyqiu189 | zhaomin86@163.com | |
| 33 | reira57 | tomcat57@naver.com | |
| 34 | sandysdreamshop88 | 18070561305@163.com | |
| 35 | shunyi6668 voguemenparty9816 | huangtaifeng2013@163.com | |
| 36 | wangzhengang1989 | zhengang198903@163.com | |
| 37 | wanmei.2017 | wanmei_2017@hotmail.com | |
| 38 | xinyibiaoshi666 yifanfengshun-886 | 3523798141@qq.com | |
| 39 | yudage9994 | yudage999@163.com | |
| 40 | yue.us7 | josephcheng63061@gmail.com | |
| 41 | zhx141218 | haoxuan131218@hotmail.com | |